JOSEPH W. COTCHETT (36324; jcotchett@cpmlegal.com)
PHILIP L. GREGORY (95217; pgregory@cpmlegal.com)
PAUL N. MCCLOSKEY (24541; pmccloskey@cpmlegal.com)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA  94010
Tel:  (650) 697-6000
Fax:  (650) 697-0577

JULIA A. OLSON (192642; jaoearth@aol.com)
**WILD EARTH ADVOCATES**
2985 Adams St.
Eugene, OR 97405
Tel:  (541) 344-7066
Fax:  (541) 344-7061

THOMAS J. BEERS (Mt. State Bar #95, *pro hac vice*
blo@montana.com )
**BEERS LAW OFFICES**
234 E. Pine
P.O. Box 7968
Missoula, MT  59807-7968
Tel:  (406) 728-4888
Fax:  (406) 728-8445

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEC L., et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>LISA P. JACKSON, et al.<br><br>    Defendants. | Case No. C11-02203 EMC<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  December 15, 2011<br>Time: 3:00 p.m.<br>Place: Courtroom 5, 17th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

LEGAL ARGUMENT ......................................................................................................................... 2

I. Federal Defendants Do Not Dispute Three Elements of the 4-Part Test for Obtaining This Preliminary Injunction ............................................................................. 2

II. The Federal Defendants Misapprehend the Status Quo in a Preliminary Injunction Context and Misconstrue Plaintiffs' Requested Injunction as Mandatory in Nature. ......... 3

III. Plaintiffs Raise Serious Questions on the Merits and Are Likely to Succeed on Their Claims ............................................................................................................................... 4

    A. Plaintiffs Public Trust Claim Raises Serious Questions and Is Likely To Succeed. 4

    B. The Federal Defendants' Jurisdictional and JusticiabilityDefenses Fail ................ 8

        1. Sovereign Immunity Is Not a Defense To This Suit .................................. 8

        2. The Political Question Doctrine Does Not Apply ..................................... 9

            a. Actions Brought Pursuant to the Public Trust Doctrine Are Rightfully Determined by the Judiciary ...................................................................... 9

            b. The Political Question Doctrine Has Limited Application ...................... 9

            c. The Issues Raised by the Complaint Have Not Been Delegated to the Political Branches ...................................................................................... 10

            d. Judicially Discoverable and Manageable Standards For Resolving The Issues Raised By Plaintiffs' Complaint Are Available ............................. 10

        3. Plaintiffs Have Alleged Sufficient Standing to Assert Their Claims ........ 11

            a. There Is No Basis For Dismissing This Case For Lack of Prudential Standing ..................................................................................................... 12

            b. Plaintiffs Have Alleged A Sufficient Basis For Article III Standing..... 12

        4. Plaintiffs' Public Trust Claim Is Not Displaced ....................................... 13

CONCLUSION ................................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Wright*, 469 U.S. 737, 751 (1984) ................................................................................12

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ..................................3

*Am. Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527 (2011) ........................................ 12, 13-14

*Anderson v. United States*, 612 F.2d 1112 (9th Cir. 1980) ..........................................................4

*Ariz. Ctr. for Law in the Pub. Interest v. Hassell*, 837 P.2d 368 (Ariz. Ct. App. 1991).........9, 13

*Baker v. Carr* 369 U.S. 186 (1962) .........................................................................................9, 10

*Bazuaye v. I.N.S.,* 79 F.3d 118, 120 (9th Cir. 1996)....................................................................3

*Benda v. Grand Lodge of Intern. Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308
    (9th Cir. 1978) ......................................................................................................................4

*City of Alameda v. Todd Shipyards*, 635 F. Supp. 1447 (N.D. Cal. 1986).................................6

*Coleman v. Miller,* 307 U.S. 433 (1939)...................................................................................10

*Ctr. for Biological Diversity v. FPL Grp.*, 83 Cal. Rptr. 3d 588 (Cal. Ct. App. 2008)...... 8, 9, 13

*Concrete Washout Systems, Inc. v. Washout Systems, LLC*, 2008 WL 5411965
    (E.D. Cal. 2008)...................................................................................................................3

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
    482 F.3d 1157 (9th Cir. 2007) ............................................................................................8

*District of Columbia v. Air Florida*, 750 F.2d 1077 (D.C. Cir. 1984) .......................................6

*Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998)..........................................................12

*Georgia v. Stanton*, 73 U.S. 50 (1867) .....................................................................................10

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417 (9th Cir. 1991) .............................................................4

*Heckler v. Lopez*, 463 U.S. 1328 (1983) ....................................................................................4

*Hodge v. Dalton*, 107 F.3d 705 (9th Cir. 1997) .........................................................................8

*Ill. Cent. R.R. v. Illinois,* 146 U.S. 387 (1892).............................................................. 9, 10, 13

*Kelly v. 1250 Oceanside Partners*, 140 P.3d 985 (Haw. 2006) ................................................10

*Lake Mich. Fed'n v. U.S. Army Corps of Engineers*, 742 F. Supp. 441 (D. Ill. 1990)...............14

*Lawrence v. Clark Cnty.*, 254 P.3d 606 (Nev. 2011) ...............................................................10

*Lewis v. United States*, 517 F.2d 236 (9th Cir. 1975).................................................................6

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**; Case No. C11-02203 EMC

*Light v. United States*, 220 U.S. 523 (1911) ..................................................................................5

*Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984) ...........................................................................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................11

*Marks v. Whitney*, 491 P.2d 374 (1971)......................................................................................12

*Massachusetts v. EPA*, 549 U.S. 497 (2007)................................................................... 11, 13, 15

*Nat'l Audubon Soc'y v. Superior Court of Alpine Cnty.*, 658 P.2d 709 (Cal. 1983).. 9, 11, 12, 13

*Nixon v. United States*, 506 U.S. 224 (1993) ...............................................................................10

*New York v. DeLyser*, 759 F. Supp. 982 (W.D.N.Y. 1991) ..........................................................5

*Ohio ex rel. Bryant v. Akron Metro. Park Dist.*, 281 U.S. 74 (1930).........................................10

*Regents of the Univ. of Cal. V. Am. Broad. Cos.,* 747 F.2d 511 (9th Cir. 1984) .........................3

*Speaker ex rel. Speaker v. Cnty. of San Bernardino*, 82 F. Supp. 2d 1105 (C.D. Cal. 2000).......6

*Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 511 (9th Cir. 1963) ....................................3-4

*Tucson Airport Auth. V. Gen. Dynamics Corp.*, 136 F.3d 641 (9th Cir. 1998) .........................8

*United States v. 1.58 Acres of Land*, 523 F. Supp. 120 (D. Mass. 1981) ....................................6

*United States v. Nordic Vill., Inc.*, 503 U.S. 30 (1992) .................................................................8

*Veith v. Jubelirer*, 541 U.S. 267 (2004)........................................................................................10

*Veterans for Common Sense v. Shinseki,* 644 F.3d 845 (9th Cir. 2011).......................................9

**STATUTES**

28 U.S.C. § 702 ................................................................................................................................9

> ***"Few challenges facing America -- and the world -- are more urgent than combating climate change. The science is beyond dispute and the facts are clear. . . . Now is the time to confront this challenge once and for all. Delay is no longer an option. Denial is no longer an acceptable response. The stakes are too high. The consequences, too serious."***
> –President Obama, November 18, 2008
>
> *"The threat from climate change is serious, it is urgent, and it has grown. . . . If we fail to meet it boldly, swiftly, and together, we risk consigning future generations to an irreversible catastrophe."* –President Obama, September 22, 2009
>
> *"The ongoing disruption of the earth's climate by man-made greenhouse gases is already well beyond dangerous and is careening toward completely unmanageable."*
> –President Obama's Director of the Office of Science and Policy, John Holdren, October 13, 2008[1]

## INTRODUCTION

The Federal Defendants do not dispute Plaintiffs are suffering irreparable harm or there is an urgent need by the federal government to reduce carbon dioxide emissions to avoid impending catastrophic harm. The Federal Defendants fail to contest it is in the public interest to grant Plaintiffs' Motion for Preliminary Injunction, the relief is feasible, or the government would face hardships with the relief requested. Given the ongoing harm, the public's interest in protecting the atmosphere and the significant hardship to Plaintiffs, and even the Federal Government, if there is further delay in reducing emissions, this Court need only find that under the Public Trust Doctrine, Plaintiffs have a fair chance at prevailing on their claims.

Our nation's youth indisputably have recourse to prevent harm to themselves and to preserve our nation's essential natural resources. That harm is the climate crisis, "a serious issue with serious effects" (Opp. at 4:10-11), causing actual, irreparable harm on a daily basis to Plaintiffs and threatening catastrophic harm if relief is not granted now.

Damages will not do. Congress is too gridlocked to act urgently no matter how many letters Plaintiffs write. The regulatory process has completely failed to protect the atmosphere. It is obvious the solutions lie not only within, but beyond, EPA's offices. The Supreme Court held private polluters cannot be sued for causing a federal public nuisance because the solution to climate crisis lies with government. The only recourse available to Plaintiffs is to ask the judiciary to enforce the duty of government to protect a resource vital to Plaintiffs' safety, wellbeing, and

---

[1] *See* Second Declaration of Julia A. Olson in Support of Plaintiffs' Motion, Ex. C-E.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**; Case No. C11-02203 EMC
EMC

1

survival. The time for delay has passed. The moment for judicial intervention is now.

The Federal Defendants' jurisdictional defenses and arguments deny the fundamental underpinnings of a sovereign government and the fundamental rights of a citizenry. In contrast, Plaintiffs' claim and their requested relief preserve the legitimacy of government and the proper balance of power between the three branches of government. The Court can, and must, state what is legally required and the executive branch of government can enact rules and policies to implement the standards articulated by the Court.

## LEGAL ARGUMENT

### I. Federal Defendants Do Not Dispute Three Elements of the 4-Part Test for Obtaining This Preliminary Injunction

The Federal Defendants adopt the four-part analysis for a preliminary injunction set forth in Plaintiffs' Opening Brief. Opp. at 3. After acknowledging the standard of review, the Federal Defendants do not dispute, provide contrary evidence, nor contest three of the four elements.

Notably, the Federal Defendants do not dispute Plaintiffs are already suffering serious harm and are likely to suffer irreparable and catastrophic harm in the immediate future if prompt and thorough action is not taken by the Federal Defendants to restore the balance of our nation's atmosphere. Nor do the Federal Defendants dispute they have caused Plaintiffs to suffer this serious harm. Having established significant harm, Plaintiffs have met the first element of the preliminary injunction test. *See* Declarations in Support of Plaintiffs' Motion for Preliminary Injunction; *see also* Second Olson Dec., ¶ 2, Ex. A.

The Federal Defendants fail to argue they will suffer any hardship if the preliminary injunction is granted. The Federal Defendants do not dispute Plaintiffs will suffer extreme hardship. *See* Opp. at 25:20-21 (summarily stating the balance of hardships does not weigh in Plaintiffs' favor, without providing any analysis or evidentiary support). Similarly, the Federal Defendants state conclusorily that the preliminary injunction will not advance the public interest, but they do not explain why nor do they cite any facts or law in support of this conclusion. *Id.*

If the Federal Defendants disputed any of these three elements, their arguments and supporting facts were required to be articulated in their opposition brief. Accordingly, the Federal

1  Defendants waive any defenses to these elements of Plaintiffs' motion for preliminary injunction.
2  *See Concrete Washout Systems, Inc. v. Washout Systems, LLC*, 2008 WL 5411965, *3 (E.D. Cal.
3  2008) (arguments not made in opposition to a plaintiff's motion for preliminary injunction are
4  waived); *see also Bazuaye v. I.N.S.,* 79 F.3d 118, 120 (9th Cir. 1996) (information and arguments
5  that could have been incorporated in the party's first brief, and are not, are waived).

6        Because of the factors of significant and catastrophic level of irreparable harm and the
7  balance of hardships tip sharply in Plaintiffs' favor, all that remains for this Court to decide is
8  whether Plaintiffs raise serious questions on the merits. *Alliance for the Wild Rockies v. Cottrell*,
9  632 F.3d 1127, 1132, 1134-35 (9th Cir. 2011). Plaintiffs not only meet that standard, but Plaintiffs
10 also demonstrate they are likely to prevail on their claims.

11 **II.     The Federal Defendants Misapprehend the Status Quo in a Preliminary Injunction
            Context and Misconstrue Plaintiffs' Requested Injunction as Mandatory in Nature.**
12

13       One purpose of a preliminary injunction under F.R.C.P., Rule 65 is to preserve the status quo
14 so a reasoned resolution of the legal claims may be had before harm (or more harm) is incurred. In
15 this case, the status quo for Plaintiffs is atmospheric $CO_2$ levels of 390 ppm, levels which already
16 well exceed safe levels of atmospheric $CO_2$. To preserve the relative positions of the parties,
17 atmospheric $CO_2$ levels would need to stabilize at 390 ppm during the pendency of this action,
18 which would require emissions reductions of approximately 75% in 2012 alone. *See* Supplemental
19 Declaration of Pushker Kharecha, Ph.D ("Kharecha Supp. Dec."), ¶¶ 2-6. Rather than seek such
20 enormous cuts, Plaintiffs only seek to hold national $CO_2$ emissions at current levels while the
21 Federal Defendants prepare and implement a plan to reduce emissions by 6% per year beginning in
22 2013. While the atmospheric status quo is not fully maintained during the pendency of the action,
23 the requested relief represents a step in the right direction, is feasible, and is in accordance with the
24 best available science to return the atmospheric balance by the end of the century.

25       Notably, the status quo of "business as usual" emissions is not lawful given the harm it has
26 caused and will continue to cause to the public trust. Thus, the status quo means "'the last,
27 uncontested status which preceded the pending controversy." *Regents of the Univ. of Cal. V. Am.*
28 *Broad. Cos.,* 747 F.2d 511, 514 (9th Cir. 1984) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316

F.2d 511, 514 (9th Cir. 1963). Even if the Federal Defendants were correct that preserving the status quo referred to government policy, it would still be necessary to cap emission levels and prohibit any changes to government policy or decision-making that would result in new sources of, or increasing, $CO_2$ emissions. *See* Kharecha Supp. Dec., ¶ 6.

Indeed, preliminary injunctions can take two forms: prohibitory and mandatory in nature. A prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits." *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983). A mandatory injunction goes beyond simply maintaining the status quo. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctions are perceived as altering, rather than preserving, the status quo and because they may be more difficult for the court to supervise than prohibitory injunctions. However, while courts are more cautious in issuing mandatory injunctions, they are granted when "extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Anderson*, 612 F.2d at 1115.

### III. Plaintiffs Raise Serious Questions on the Merits and Are Likely to Succeed on Their Claims

"For purposes of injunctive relief, serious questions refers to questions which cannot be resolved one way or the other at the hearing on the injunction . . . Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (citations and internal quotation marks omitted); *Benda v. Grand Lodge of Intern. Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978) (if the balance of harm tips decidedly toward plaintiff, the minimum required is serious enough questions to require litigation).

#### A. Plaintiffs Public Trust Claim Raises Serious Questions and Is Likely To Succeed

Plaintiffs have, at a minimum, raised serious questions on the merits of their claims. The Federal Defendants have a fiduciary obligation under the Public Trust Doctrine to conserve, preserve and protect our nation's crucial natural resources, including the atmosphere. The Federal Defendants have failed to fulfill this obligation. Plaintiffs have established with expert declarations that (1) our nation's atmosphere has been harmed to the point where our nation's natural systems

1  are suffering substantial (and almost irreparable) harm; and (2) our nation faces runaway heating
2  and catastrophic damage if tipping points are reached. The damage to the public trust resource,
3  primarily from $CO_2$ emissions, is threatening human health, national security, and ecological
4  collapse at an order of magnitude beyond any prior threats.
5        The Federal Defendants do not explicitly claim there is no Public Trust Doctrine. Nor do
6  they argue the atmosphere is not a trust resource. They merely contend, using select quotes taken
7  out of context, that Plaintiffs misconstrue the Public Trust Doctrine's "foundation, uses and limits."
8  *See* Opp. at 4:17. Thus, Plaintiffs have demonstrated "a fair chance" on the merits.
9        Nonetheless, the Federal Defendants misstate public trust law. For instance, the Supreme
10  Court decision *Light v. United States* establishes there is a federal public trust. 220 U.S. 523, 537
11  (1911) ("In the same way and in the exercise of the same *trust* [Congress] may disestablish a
12  reserve, and devote the property to some other national and public purpose." (emphasis added)).
13  *Light* affirms that the legislative and executive branches have a fiduciary obligation to protect and
14  manage the trust and that courts should enforce the trust. *Id.* However, there was no contention in
15  *Light* that the trustee had violated its duties; rather the trustee was upholding the trust for the benefit
16  of the people by preventing harmful trespass. *Id.* Thus, factually this case is inapposite to the
17  present action. Further, Plaintiffs are not asking this Court "to say *how* th[e] trust shall be
18  administered," *id.*, but that the atmospheric trust asset must be protected and preserved by the
19  Federal Defendants on behalf of Plaintiffs as public trust beneficiaries.
20        The Federal Defendants also rely on *New York v. DeLyser*, 759 F. Supp. 982 (W.D.N.Y.
21  1991), for their proposition that the Public Trust Doctrine "has been held not to support a valid
22  claim under *federal* common law." Opp. at 6:3-5. *DeLyser* did **not** address the federal Public Trust
23  Doctrine and did **not** hold there is no federal question jurisdiction when the claim asserted is by
24  beneficiaries against the federal trustee. Rather, the court held claims arising under *state* public
25  trust law belong in *state* court and the *state*'s attempts to protect the *state*'s public trust in beds and
26  waters of Wisconsin lakes were a matter of *state* law. *Id.* at 989-90. Using that analysis in the
27  present case would make the federal government trustee over our nation's atmosphere and claims
28  arising from that trusteeship certainly arise under *federal* law and properly brought in *federal* court.

The Federal Defendants mistakenly rely on *District of Columbia v. Air Florida*, 750 F.2d 1077, 1082 (D.C. Cir. 1984), where, in affirming the district court's decision, the D.C. Circuit "declin[ed] to consider . . . whether the public trust doctrine provides a basis for Air Florida's liability," because "the District's public trust argument [was] . . . advanced for the first time on appeal." *Id.* at 1081. Therefore, any select quotes cited by the Federal Defendants are purely *dicta* on a matter the Court of Appeals declined to consider because it was not raised below.

Moreover, there is federal law supporting the federal Public Trust Doctrine. In *United States v. 1.58 Acres of Land*, the federal government sought to acquire certain waterfront property for public use through a condemnation action. 523 F. Supp. 120, 121 (D. Mass. 1981). In holding the federal government could never convey land subject to the Public Trust Doctrine in fee simple absolute without retaining its public trust interests, the district court stated state and federal entities share concurrent jurisdiction with regards to public trust assets and yet the federal public trust interest is superior to that of a state. *Id.* at 124.

> [T]he state's administration of the public trust is subject to the paramount rights of **the federal government to administer its trust** with respect to matters within the federal power. **The trust is of such a nature that it can be held only by the sovereign**, and can only be destroyed by the destruction of the sovereign. . . . Since **the trust impressed upon this property is governmental and administered jointly by the state and federal governments** by virtue of their sovereignty, neither sovereign may alienate this land free and clear of the public trust.

*Id.* (Emphasis added). This Court in *City of Alameda* "affirm[ed] its agreement with the reasoning in" *1.58 Acres of Land* and stated the federal government may not abdicate its role as a trustee. *City of Alameda v. Todd Shipyards Corp.,* 635 F. Supp. 1447, 1450 (N.D. Cal. 1986). As in *1.58 Acres of Land* and *City of Alameda*, the Federal Defendants may not abdicate their public trust duties nor alienate public trust assets, including the atmosphere.[2]

---

[2] Not surprisingly, Federal Defendants fail to address most of the state public trust law cited by Plaintiffs or provide any argument for why state public trust law cannot provide persuasive authority for this Court in reviewing Plaintiffs' claims. *See* Opp. at 21:15-17. This Court can look to the well-developed state public trust law for guidance and persuasive authority on these issues. *See Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975) ("In determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law."); *Speaker ex rel. Speaker v. Cnty. of San Bernardino*, 82 F. Supp. 2d 1105, 1109 (C.D. Cal. 2000) (finding that a federal "[c]ourt may look to state law to fill in gaps in federal common law" and that "state law can be used as a guide to federal privilege law.").

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**; Case No. C11-02203 EMC EMC

6

An agency of the Department of Commerce, the National Oceanic and Atmospheric Administration ("NOAA"), asserts the existence of a federal public trust obligation: "A distinct characteristic of the American Public Trust Doctrine is that federal and state governments exercise concurrent authorities over Public Trust interests. The balance of power shifts according to the interest at stake." Second Olson Dec., Ex. G. The public trust at stake here is the sustainability of a balanced atmosphere for Plaintiffs, clearly a national interest. NOAA further explains that "the essence of the Public Trust Doctrine, is that the doctrine is a fundamental safeguard of a free society. It provides oversight of fundamental public interests and protection against [c]orruption[, a]buse of power[, and n]egligence." Second Olson Dec., Ex. H.

The Federal Defendants have neither claimed nor submitted evidence that the federal government has done a comprehensive accounting of the atmospheric public trust asset to ensure that its management of the asset conserves, protects, and preserves the asset. Once the Federal Defendants perform an accounting as sought by Plaintiffs, it will be clear that their management of the resource has caused or contributed to the current imbalance in the resource. It also will be clear that, based on science, the imbalance has reached a point where the resource will not be sustainable for Plaintiffs if business as usual continues. As trustees of the atmosphere, the Federal Defendants are required to make such an accounting of the trust asset and to limit public or private uses to ensure that the trust *res* is safeguarded.

Plaintiffs established (1) our nation's atmosphere is suffering substantial harm; and (2) our nation faces catastrophic damage if nothing is done to stop tipping points from being reached. The damage to the public trust resource, primarily from $CO_2$ emissions, threatens human health, national security, and our ecology at an order of magnitude beyond prior threats. The Federal Defendants are alienating a key trust asset: the atmosphere. This alienation is at the expense of Plaintiffs. In their opposition, the Federal Defendants do not argue the alienation is in furtherance of a valid trust purpose or that such alienation will protect the trust for Plaintiffs. Therefore, the Federal Defendants have a fiduciary obligation under the Public Trust Doctrine to account for the trust asset (the atmosphere) and develop a plan for protecting as much of its integrity as is feasible before a final determination is made as to whether they are properly conserving, preserving, and protecting this

asset. An accounting should be ordered as part of the preliminary injunction.

### B. The Federal Defendants' Jurisdictional and Justiciability Defenses Fail

The Federal Defendants pose four jurisdictional, or justiciability, defenses to Plaintiffs' ability to prevail: (1) sovereign immunity; (2) political question; (3) standing (both prudential and Article III); and (4) displacement. In order to find Plaintiffs have raised serious questions on the merits, this Court need not decide these questions conclusively in Plaintiffs' favor. *See Lopez v. Heckler*, 725 F.2d 1489, 1498-99 (9th Cir. 1984) *judgment vacated on other grounds* 469 U.S. 1082 (1984). However, given the simultaneous Motions to Dismiss filed by the Federal Defendants and proposed intervenor, Plaintiffs establish both herein and in their oppositions to those Motions to Dismiss that these defenses do not have merit and should be rejected. A denial of the Federal Defendants' Motion to Dismiss will establish Plaintiffs have, at minimum, raised serious questions on the merits, which is all that is needed to grant Plaintiffs' Motion for Preliminary Injunction.

#### 1. Sovereign Immunity Is Not a Defense To This Suit

Sovereign immunity does not apply in a suit against a sovereign trustee by the citizen beneficiaries of the trust because the judicial branch remains the ultimate guardian of the trust. *See Ctr. for Biological Diversity v. FPL Grp., Inc.*, 83 Cal. Rptr. 3d 588, 602 (2008). In fact, the Federal Defendants cite no public trust cases where sovereign immunity acted as a bar to a suit by a beneficiary against the sovereign trustee.[3] If the public trust duty exists, it can be enforced through the judiciary against the sovereign trustee.

Even if sovereign immunity could bar a public trust suit by trust beneficiaries against the federal trustee, the United States has waived sovereign immunity for suits seeking declaratory and injunctive relief against federal agencies and officers even where the suit does not arise under the

---

[3] *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645-648 (9th Cir. 1998) (the APA waiver of sovereign immunity did not apply because the relief sought by Plaintiff was forbidden by the Tucker Act); *Hodge v. Dalton*, 107 F.3d 705, 707, 712 (9th Cir. 1997) (the only waiver of sovereign immunity in that action was in Title VII, which did not provide a remedy for plaintiff, as an active-duty service member against the Secretary of Navy, for racial discrimination; also holding Plaintiff was not without a remedy to correct racial discrimination); *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 32-34 (1992) (narrowly deciding whether a specific Bankruptcy Code provision waived sovereign immunity from an action seeking monetary recovery in bankruptcy); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (Plaintiffs could not assert a *Bivens* action against agency officials for a constitutional infringement of their personal rights because *Bivens* claims only apply against agency officials in their "individual" capacities).

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**; Case No. C11-02203 EMC EMC

8

Administrative Procedures Act ("APA"). 28 U.S.C. § 702; *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 864-867 (9th Cir. 2011) (§ 702 is a waiver of sovereign immunity for constitutional claims not brought under the APA). Thus, the Federal Defendants are not immune from suit.

### 2. The Political Question Doctrine Does Not Apply

The political question arguments also fail as they ignore the nature of the Public Trust Doctrine and misconstrue the relief sought by Plaintiffs. An action to enforce the fiduciary duty based upon the public trust doctrine does not implicate the political question doctrine.

#### a. Actions Brought Pursuant to the Public Trust Doctrine Are Rightfully Determined by the Judiciary

Federal courts necessarily have jurisdiction to hear federal public trust cases, as it is a judicially created and enforced doctrine. *See Ctr. for Biological Diversity*, 83 Cal. Rptr. 3d at 601 (many cases "have been brought by private parties to prevent agencies of government from abandoning or neglecting the rights of the public with respect to resources subject to the public trust." (citing *Ill. Cent. R.R. v. Illinois,* 146 U.S. 387)).

Importantly, the Public Trust Doctrine does not dictate a specific process or action. The doctrine is an attribute of sovereignty and like the Constitution, it overlays all other acts of government, including the enactment of legislation or the promulgation of regulations. *See e.g.*, *Ill. Cent. R.R.*, 146 U.S. at 439-440, 450-451; *Ariz. Ctr. for Law in the Pub. Interest*, 837 P.2d at 169. The California Supreme Court affirmed this principle by explaining that courts have concurrent jurisdiction with other branches over the public trust. *Nat'l Audubon Soc'y v. Superior Court of Alpine Cnty.*, 658 P.2d 709, 731-32 (Cal. 1983). Clearly, this Court has the power to and has concurrent jurisdiction with other branches over the public trust.

#### b. The Political Question Doctrine Has Limited Application

The political question doctrine is based on separation of powers concerns. It is used to address those extraordinary situations where courts must defer from exercising their constitutional role because the subject matter of the litigation should be left to the legislature or the executive. *Baker v. Carr* 369 U.S. 186, 216 (1962). Ultimately, *Baker* set a high bar for nonjusticiability: "[u]nless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence." *Baker*, 369 U.S. at 217.

Judges have cautioned to recognize that the doctrine is one of "political questions, not one of 'political cases.'" *Baker*, 369 U.S. at 217.

### c. The Issues Raised by the Complaint Have Not Been Delegated to the Political Branches

The U.S. Supreme Court has stated the *Baker* formulations "are probably listed in descending order of both importance and certainty." *Veith v. Jubelirer*, 541 U.S. 267, 278 (2004). Moreover, in many cases where it was held the political question doctrine barred federal jurisdiction, at issue was a constitutional claim. Thus, constitutional commitment to the political branches is the most important of the *Baker* formulations. See, e.g., *Nixon v. United States,* 506 U.S. 224 (1993) (Impeachment Trial Clause); *Gilligan v. Morgan,* 413 U.S. 1 (1973) (Due Process Clause); *Coleman v. Miller,* 307 U.S. 433 (1939) (Article V); *Ohio ex rel. Bryant v. Akron Metro. Park Dist.,* 281 U.S. 74 (1930) (Guarantee Clause); *Georgia v. Stanton,* 73 U.S. 50 (1867) (Constitutional challenge to Reconstruction Acts). Plaintiffs' public trust claims are not constitutionally committed to the political branches. Accordingly, the political question doctrine has no application here.

### d. Judicially Discoverable and Manageable Standards For Resolving The Issues Raised By Plaintiffs' Complaint Are Available

Contrary to the Federal Defendants' assertions, there are "judicially discoverable and manageable standards" for resolving the issues raised by the Complaint. Opp. at 11. Indeed, the Complaint's resolution would not require an impermissible "initial policy determination," as alleged by the Federal Defendants. *Id.* In granting the relief requested, this Court will not be imposing policy decisions on agencies, or otherwise direct how an agency exercises its discretion, as the Federal Defendants would have this Court believe. Rather, this Court would interpret and enforce obligations and duties imposed on the Federal government, and its agencies, as the trustee of the public trust res in protecting the atmosphere.[4]

How will this Court go about doing this? By reviewing the plethora of case law that analyzes public trust duties of sovereign governments and creates appropriate remedies; by considering evidence presented, including expert testimony, by all parties; by using its sound judgment regarding

---

[4] *Kelly v. 1250 Oceanside Partners* 140 P.3d 985, 1008 (Haw. 2006) includes a lengthy discussion on how the court evaluated the actions and inactions of the county for violations of the public trust. There is a wealth of case law on the Public Trust Doctrine, from *Illinois Central* to *Lawrence v. Clark County* 254 P.3d 606 (Nev. 2011) decided this year, which provide ample guidance to this Court.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**; Case No. C11-02203 EMC EMC

10

the Federal Defendant's duties under the public trust, and fashioning an order that does not specifically compel the Federal Defendants to adopt a particular plan. In summary, the issue of protecting the atmosphere is not committed to the political branches, and there are sufficient judicial standards for issuing a preliminary injunction. That the political question doctrine does not apply is clear. Moreover, "[i]f the issue of justiciability is in doubt, it should be resolved in favor of justiciability in cases of great public interest." *Nat'l Audubon Soc'y*, 658 P.2d at 717 n.14.

### 3. Plaintiffs Have Alleged Sufficient Standing to Assert Their Claims

Plaintiffs have demonstrated they have standing. Only one plaintiff needs to allege sufficient standing for the case to go forward. *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Thus, for Article III standing, Plaintiffs need only show one plaintiff has sufficiently alleged: (a) he suffers an injury in fact; (b) the injury is fairly traceable to the defendant's conduct; and (c) the injury is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

Here, the Federal Defendants do not challenge – nor could they – that Plaintiffs have alleged both sufficient injury-in-fact and causation. Rather, they only argue: (i) Plaintiffs' lack "prudential" standing; and (ii) Plaintiffs have failed to allege redressability. As demonstrated below and in Plaintiffs' Opposition to the Motion to Dismiss, neither of these arguments has merit.

As with their political question arguments, the Federal Defendants conveniently misconstrue the scope of Plaintiffs' claim, the extent of the role of the Court **and** misstate the requested remedy. The conduct (or lack thereof) which is the gravamen of Plaintiffs' Complaint is the failure of the Federal Government to comply with its fiduciary obligations duty to protect the atmosphere's energy balance. For that balance to be returned to equilibrium, the best science dictates $CO_2$ emissions must be **immediately** curtailed. Otherwise that energy imbalance will continue accelerating toward "tipping points," which, if reached, will prevent the return to equilibrium, resulting in catastrophic consequences to Plaintiffs. *See* Kharecha Dec; Second Olson Dec., Ex. J.

Importantly, and contrary to the assertions of the Federal Defendants, under the relief requested, the Court's limited role is to ensure that the scientifically required standard for reduction of $CO_2$ be substantially adhered to by the trustee in order to first, mitigate against reaching those "tipping points," and second, return the Earth's energy balance to equilibrium.

### a. There Is No Basis For Dismissing This Case For Lack of Prudential Standing

Prudential standing bars adjudication of "generalized grievances more appropriately addressed in the representative branches." *Allen v. Wright*, 469 U.S. 737, 751 (1984) (citations omitted). Here, Plaintiffs assert their particularized and concrete injuries that can be addressed under the law governing public trusts, by requiring an accounting and a plan to protect the trust. Plaintiffs' claims are based on well established principles of law – the government holds natural resources in trust for the public benefit and hence can be sued for wasting these precious assets.

State jurisprudence has long recognized standing for plaintiffs challenging violations of the public trust. *Marks v. Whitney*, 491 P.2d 374, 381 (Cal. 1971) (citizens have standing to sue under public trust though a court may raise the issue on its own); *Nat'l Audubon Soc'y*, 658 P.2d at 716 n.11 ("any member of the general public has standing to raise a claim of harm to the public trust.").

Moreover, the Federal Defendants fail to mention the arguments asserted here for a lack of prudential standing, *i.e.*, the alleged injury "could potentially be suffered by virtually every person," and implicates a "multiplicity of potential plaintiffs and defendants," were made by these same defendants unsuccessfully in *American Electric Power Co. v. Connecticut*, 131 S. Ct. 2527, 2535 (2011) ("*AEP*") (affirming exercise of jurisdiction over the case); *see* Brief For Tennessee Valley Authority (Jan. 2011) at 14-21 (*See* Second Olson Dec., Ex. F). The mere fact that "these climate-change risks are 'widely shared'" does not mean they cannot confer standing. *Massachusetts v. EPA*, 549 U.S. 497, 522 (2007); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) There is no bar to prudential standing in this case.

### b. Plaintiffs Have Alleged A Sufficient Basis For Article III Standing

The Federal Defendants do not dispute that Plaintiffs have established sufficient injury-in-fact. Nor do the Federal Defendants dispute that they have caused or contributed to those injuries. They focus, rather, on the redressability prong of standing. However, Plaintiffs have demonstrated the likelihood they can prevail on the redressability element of standing through expert declarations demonstrating that to even begin protection and replenishment of the atmosphere, the Federal Defendants must have a plan for recovery and immediately begin reducing emissions. If this Court

allows Plaintiffs' case to proceed, then the best science will dictate the fiduciary responsibility and provide the means to slow the progress of the continuing and exacerbating injury. The requested relief need not remedy the *entire* problem in order for this Court to exercise jurisdiction. As the Court emphasized in *Massachusetts v. EPA*, a "plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." 549 U.S. at 525 (emphasis in original).

### 4. Plaintiffs' Public Trust Claim Is Not Displaced

Public trust claims are not subject to displacement. *Ill. Cent. R.R.*, 146 U.S. at 439-440, 450-451, 453-54 (overturning act of legislature on public trust grounds). Just as state courts have jurisdiction over state public trust claims, federal courts necessarily have jurisdiction to hear federal public trust cases because it is a judicially created and enforced doctrine. *See e.g. Ctr. for Biological Diversity*, 83 Cal. Rptr. 3d at 602 (agency actions are subject to judicial review). A government may of course use laws to carry out its public trust obligations, but those laws and actions are always judicially reviewable under the Public Trust Doctrine, to ensure that the trust resource is protected for future generations. *Ariz. Ctr. for Law in the Pub. Interest*, 837 P.2d at 169 ("[t]he check and balance of judicial review provides a level of protection against improvident dissipation of an irreplaceable res."). *Nat'l Audubon Soc'y*, 658 P.2d at 731-32 (affirming concurrent jurisdiction with the other branches over the public trust).

The recent U.S. Supreme Court holding in *AEP*, addressing displacement of federal common law nuisance claims by federal statutes in the climate change context, is not applicable here. In *AEP*, plaintiffs alleged a public nuisance and sought injunctive relief requiring third-party defendants—five power companies regulated under the Clean Air Act—to cap and then reduce their carbon dioxide emissions. *AEP*, 131 S. Ct. at 2534. *AEP* is inapposite here because the Public Trust Doctrine is fundamentally different from the nuisance principle. The trust framework is based on the duty of a sovereign to protect and secure the integrity of the whole trust asset. A public nuisance claim, by contrast, focuses exclusively on individual parties causing "substantial and unreasonable interference with public rights." *See id.* at 2534.

"The test for whether congressional legislation excludes the declaration of federal common

law is simply whether the statute 'speak[s] directly to [the] question' at issue." *Id.* at 2537. Whereas the nuisance claim is directed towards third parties and is displaced by a regulatory scheme directed towards the same kind of harm caused by the same class of party, a trust claim focuses on the more fundamental question of whether the sovereign trustee is meeting its duty towards the citizens by adequately protecting the asset held in public trust. A trust claim brought against a sovereign does not invade the sphere of regulation—deciding what activities to curtail and to what extent—but rather demands an accounting of the overall effectiveness of the trustee's actions to achieve asset protection. A public trust claim against government simply does not put courts in the position of making policy determinations as to who should be regulated and to what extent, an unavoidable inquiry embedded in the "unreasonable" standard of a nuisance claim. Thus, unlike the claims for relief in *AEP*, Plaintiffs here do not seek for the Court to impose emission standards on individual polluters. *Compare AEP*, 131 S.Ct. at 2539-40. Consistent with the reasoning behind the holding in *AEP*, Plaintiffs seek to ensure the Federal Defendants, including EPA, act in accordance with their duty to return our nation's atmosphere to a balanced state for the benefit of Plaintiffs. This does not make the Court a "super-regulator," but rather a "super-enforcer." *See* Fed Opp. at 4:13.

Finally, regulation under the Clean Air Act alone does not answer the question of whether the Federal Defendants have met their fiduciary duty to the public trust beneficiaries. Even when a government regulates to prevent harm to the trust, the basic trust question remains as to whether such regulation is adequate to protect the trust asset. While EPA can regulate pollution under the CAA, it alone cannot meet the atmospheric trust obligation of all of the Federal Defendants. Therefore, the regulatory scheme under the CAA does not "speak directly to the question" of the measures needed for the sovereign to meet its fundamental fiduciary duties of atmospheric protection, even though EPA's regulations must play an essential role in meeting its trust obligations. *See Lake Mich. Fed'n v. U.S. Army Corps of Engineers*, 742 F. Supp. 441, 446 (D. Ill. 1990). The Federal Defendants do not argue that EPA's actions (or the actions of any other defendant agency or official) will protect the resource and they do not dispute that their actions or inaction have caused the resource substantial harm. The Federal Defendants only contend that EPA is taking some action, and that action is all that is required by any of the Federal Defendants. To

establish justiciability, Plaintiffs need not prove here that EPA's actions are wholly inadequate; Plaintiffs need only establish that this Court has the authority to review whether EPA's actions meet its obligations under the public trust doctrine to preserve the atmosphere for Plaintiffs.

## CONCLUSION

In decisions such as *Massachusetts v. EPA*, our courts have found the harms associated with climate change are "serious and well recognized." These Federal Defendants have a fiduciary obligation to Plaintiffs to reduce these harms to public health and safety, economic well-being and natural resources. Reducing $CO_2$ emissions to avoid impending catastrophic harm is critical to (a) limiting the extent of climate change impacts and resulting damages; and (b) preserving as much of the status quo as possible so a reasoned resolution of the legal claims may be had before further points of irreparable harm are crossed.

Based on their conduct to date, the Federal Defendants need this Court to issue a preliminary injunction that recognizes the Public Trust Doctrine applies to our natural resources, including the atmosphere, and requires two steps: (1) an accounting; and (2) a coordinated plan to respond to the scientifically-dictated target of reducing emissions by 6% per year beginning in 2013. By issuing a preliminary injunction now, this Court will preserve the ability of the parties to reduce $CO_2$ emissions and thus atmospheric $CO_2$ to safe levels per the scientific prescription to maintain the healthy functioning of the resource and its beneficial uses.

Plaintiffs' preliminary injunction seeks to give the Federal Government a flexible framework to accomplish this plan within and across departments. However, both individually and collectively, the Federal Defendants must be ordered to address the impacts of a changing climate before Plaintiffs suffer further irreparable harm. The state of science and the fiduciary mandates of the Public Trust Doctrine must be used to reverse the continued recalcitrance of these Federal Defendants through strong national efforts and mandatory emissions reductions. If this Court fails to issue such an injunction, reversing the impacts of climate change will become if not increasingly more difficult and more expensive, then impossible. The youth of our country matter; an injunction must issue to protect them.

Respectfully submitted,

Dated: November 14, 2011

**COTCHETT, PITRE & MCCARTHY, LLP
WILD EARTH ADVOCATES
BEERS LAW OFFICES**

By: _____/s/_____
JULIA A. OLSON
PHILIP L. GREGORY
THOMAS BEERS
*Attorneys for Plaintiffs*

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**; Case No. C11-02203 EMC
EMC

16