UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEC L., *et al.*, | No. C-11-2203 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE** |
| LISA P. JACKSON, *et al.*, | **(Docket No. 95)** |
| Defendants. | |
| _____/ | |

Defendants' motion to transfer venue from the Northern District of California to the District of Columbia came on for hearing before the Court on November 30, 2011. Docket No. 95. For the reasons set forth below, the Court **GRANTS** Defendants' motion to transfer venue.

### I. FACTUAL & PROCEDURAL HISTORY

Plaintiffs Alec L., Madeleine W., Garrett S., Grant S., Zoe J., Kids vs. Global Warming, and WildEarth Guardians bring this suit against Defendants Lisa P. Jackson, Kenneth L. Salazar, Thomas J. Vilsack, Gary F. Locke, Steven Chu, and Leon E. Panetta. First Amended Compl. ¶ 18 ("FAC"). Plaintiffs allege that under the public trust doctrine, the atmosphere is a public trust resource, and that the United States government has an affirmative fiduciary duty as the trustee to preserve and protect the atmosphere from global warming, for the benefit of present and future generations. FAC ¶ 19. Plaintiffs further allege that Defendants, as the heads of the United States Environmental Protection Agency ("EPA"), the United States Department of the Interior ("DOI"), the United States Department of Agriculture ("USDA"), the United States Department of Commerce ("Commerce"), the United States Department of Energy ("DOE"), and the United States Department

of Defense ("DOD"), have the primary responsibility to carry out this affirmative fiduciary duty on behalf of the federal government. FAC ¶ 18. Plaintiffs thus challenge Defendants' general failure to reduce the United States' greenhouse gas emissions by the amount necessary to limit the effects of global warming. FAC ¶¶ 141-150. Plaintiffs do not challenge a specific policy or project made by Defendants, but more generally challenge the Defendants' actions permitting the federal government to contribute to global warming. FAC ¶¶ 53, 55, 57, 59, 61, 63, 65.

Defendants seek to transfer this suit to the District of Columbia, pursuant to 28 U.S.C. § 1404(a). Docket No. 95 ("Motion"). Proposed Intervenor-Defendant The National Association of Manufacturers supports Defendants' motion to transfer. Docket No. 117. Plaintiffs oppose the motion to transfer. Docket No. 118 ("Opp.").

## II. DISCUSSION

A. Standard of Review

Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). In the instant case, Defendants seek a transfer to the District of Columbia. Motion at 1. Plaintiffs admit that this action could have been brought in the District of Columbia. Opp. at 4. Accordingly, the only question is whether the Court should transfer this action based on convenience to the parties and witnesses, as well as the interests of justice.[1]

In deciding whether or not to transfer, a district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The Ninth Circuit has identified as relevant factors:

---

[1] Plaintiffs originally argued that pursuant to Federal Rule of Civil Procedure 12(h), Defendants had waived any arguments as to venue by not including it in a responsive pleading. However, Rule 12(h) applies to defenses listed in Rule 12(b)(2)-(5), not a motion to transfer venue under 29 U.S.C. § 1404(a). At the hearing, Plaintiffs conceded that Defendants had not waived their right to move for a transfer of venue, and that this motion was not time-barred. *See also EEOC v. Lockheed Martin*, Civil Nos. 05-4479DAE-LEK, 05-00496DAE-LEK, 2007 WL 4468658, at *3 (D. Haw. Dec. 18, 2007) ("the timing of the Venue Motion [does] not render it frivolous because, under 28 U.S.C. § 1404(a), a party may bring a motion for transfer at any time.").

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiffs' cause of action in the chosen forum, (6) the difference in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Consistent with the above, courts in the District have commonly articulated the following relevant factors:

> (1) plaintiffs' choice of forum, (2) convenience of the parties and witnesses, (3) ease of access to sources of proof; (4) local interest in the controversy; (5) familiarity of each forum with the applicable law; and (6) relative congestion in each forum

*Ctr. for Food Safety v. Vilsack*, No. 11-00831 JSW, 2011 U.S. Dist. LEXIS 31688, at *18 (N.D. Cal. Mar. 17, 2011).

B.  Convenience Factors

    1.  Plaintiffs' Choice of Forum

Normally, the factors of inconvenience must be weighed against the plaintiff's choice of forum, which is entitled to substantial deference. *See Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)). However, the Ninth Circuit has also found that "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

Applying this test, the court in *Sierra Club v. United States Defense Energy Support Center* found that the plaintiff's choice of forum was not entitled to substantial deference in granting the defendant's motion to transfer to the Eastern District of Virginia. No. C 10-2673 JSW, 2011 U.S. Dist. LEXIS 4090, at *5 (N.D. Cal. Jan. 11, 2011). There, the plaintiff alleged that the defendant had violated the Energy Independence and Security Act of 2007 when it entered into contracts to procure fuel produced from Canadian oil sands, which would result in higher greenhouse gas

emissions than conventional fuel sources. *Id.* at *2. Although the plaintiff had members in the Northern District and its campaign against global warming was headquartered in San Francisco, the court concluded that there was no particularized interest because the alleged harm of global warming had a national impact. *Id.* at *5. In contrast, the Eastern District of Virginia had a particularized interest in the outcome of the litigation because the contract was formulated there, and the responsible officials and named defendants were located in the Eastern District. *Id.* Thus, the court gave little weight to the plaintiff's choice of forum because "the underlying action is not connected to the Northern District of California," and found that this factor weighed in favor of transfer. *Id.* at *5.

Here, Plaintiffs' only connection to the Northern District is that two of the five individual Plaintiffs reside in the Northern District. The remaining individual Plaintiffs reside in Virginia and Southern California, and Plaintiffs do not allege that the organizational Plaintiffs reside in the Northern District. FAC ¶¶ 27, 39, 48, 49. Although Plaintiffs contend that these individual Plaintiffs will suffer the effects of global warming in the Northern District, Plaintiffs have not demonstrated that these individuals will suffer a particularized harm that is distinct from the harm that will be suffered by every other resident of the United States. Plaintiffs' citation to *STX Inc. v. Trik Stik, Inc.* is inapposite; there, the alleged trademark occurred throughout the country, but the plaintiff suffered a unique harm in the Northern District based on the violation of its individual trademark. 708 F. Supp. 1551, 1554 (N.D. Cal. 1988). No other company suffered the same harm that the plaintiff did. In contrast, this case concerns global warming, which will not only occur throughout the country but will harm every citizen equally regardless of where they reside. Nor has Plaintiffs alleged that any of the organizational Plaintiffs are based in this District.

Second, the operative facts of this case likely occurred in the District of Columbia. Taking Plaintiffs' complaint at face value, Plaintiffs are challenging Defendants' actions as the heads of government agencies and departments that are centered in our nation's capitol. *E.g.*, FAC ¶¶ 145-150. While Plaintiffs argue that Defendants have regional offices in the Northern District, the complaint does not challenge decisions made by a local administrator. While it is conceivable that actions taken at the regional or local level may constitute relevant evidence, the gravamen of the

complaint is directed at nationwide policies that are created by federal agencies and departments headquartered in the District of Columbia. Plaintiffs have themselves stated that the named Defendants – who are currently located in the District of Columbia – are responsible for *all* actions of these agencies and departments. FAC ¶¶ 54, 56, 58, 60, 62, 64. This case is thus comparable to *Sierra Club*, as the operative policymaking, responsible officials, and named Defendants are all located in the District of Columbia. *Compare* 2011 U.S. Dist. LEXIS 4090, at *5.

Thus, as the operative facts did not occur in the Northern District and Plaintiffs have not shown that the Northern District has a *particular* interest in the parties or the subject matter, Plaintiffs' choice of forum is entitled to little weight.

2. <u>Convenience of Parties</u>

In this case, Plaintiffs are located throughout the country. Three of the individual Plaintiffs are located in California, while two of the individual Plaintiffs are located in Virginia. FAC ¶¶ 27, 34, 39, 43. Plaintiff WildEarth Guardians also has considerable litigation experience in the District of Columbia, having filed a number of lawsuits against the federal governments and its officers in the District of Columbia. Docket No. 127 at 3 ("Reply"). In contrast, all of the named Defendants are located in the District of Columbia, and none have any apparent particular connection to the Northern District. While Plaintiffs have argued that Defendants' respective agencies and departments have offices in the Northern District, Plaintiffs chose to name these Defendants as the adverse party in this suit, and claim that Defendants are responsible for all actions taken by their agencies and departments. FAC ¶¶ 25, 54, 56, 58, 60, 62, 64. Thus, looking at all of the parties involved in this case, the majority of Plaintiffs and Defendants reside in or near or have connections to the District of Columbia. Furthermore, although three of the individual Plaintiffs reside in California, it appears doubtful they will play a major role in any trial.

Additionally, this Court has yet to make a ruling on any of the pending motions. Although Plaintiffs argue that the parties will be burdened by the need to rewrite the motion papers, Defendants argue that the papers do not rest on Ninth Circuit or Northern District authority. Opp. at 7-8; Reply at 5. Accordingly, there is likely little inconvenience to the parties to modifying their briefing for the District of Columbia court, as all substantive arguments will remain unchanged.

The Court thus finds that the convenience of the parties weighs in favor of transfer.

3. <u>Convenience of Witnesses</u>

In determining witness convenience, the moving party is normally "obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include." *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) (citing *A.J. Indus. Inc. v. U.S. Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974). Here, Plaintiffs argue that Defendants have failed to satisfy their burden because Defendants have not identified any witnesses that will be inconvenienced by litigation in the Northern District. Opp. at 9.

The instant case is distinguishable from those in which the parties could more readily identify key witnesses. Rather than challenge a discrete decision or policy, Plaintiffs essentially challenge every decision and policy made by the federal government that would impact global warming. *E.g.*, FAC ¶¶ 10, 16. Unlike more typical cases, it would not be fair to impose on Defendants the burden of identifying key witnesses who could comment on the federal government's every failure or success in addressing global warming, particularly when the potential breadth of this case appears expansive and ill-defined. Instead, looking at Plaintiffs' complaint and the likely direction of this case, the Court finds that the policies and decisions at issue are national in scope. Such national policy is necessarily created in the District of Columbia, the center of the federal government. Witnesses with knowledge of these national policies would likely be primarily located in the District of Columbia, where national policies are made, rather than in the regional offices.[2]

In contrast, Plaintiffs themselves acknowledge that their "witnesses hail from across the United States and from around the world and inevitably many would need to travel regardless of the forum."[3] Opp. at 9. Given that the primary witnesses for Defendants will likely be located in the

---

[2] Although Plaintiffs identify different regional offices in the Northern District, Plaintiffs generally fail to explain what information administrators in these offices would have that is relevant to the crafting of nation-wide policies challenged herein. *See* Docket No. 119 ¶ 4 ("Supp. Olson Decl.").

[3] In examining the individuals who provided declarations in support of Plaintiffs' motion for preliminary injunction, only one individual resides in the Northern District. Otherwise, the individuals reside throughout the country, including the District of Columbia, Massachusetts, New

District of Columbia, and Plaintiffs' witnesses reside throughout the country – many on the East coast – the Court finds that this factor weighs in favor of transfer.

### 4. Ease of Access to Evidence

This case is distinguishable from other environmental cases that are based on an administrative record, which is easily transported with modern technology. *See Ctr. for Biological Diversity v. Lubchenco*, No. C-09-4087 EDL, 2009 U.S. Dist. LEXIS 119794, at *9 (N.D. Cal. Nov. 30, 2009). Here, there is no administrative record, as Plaintiffs challenge Defendants' general policymaking decisions. *E.g.*, FAC ¶¶ 16, 18. Furthermore, not only is a trial in this case likely reliant on witness testimony, but any evidence relevant to Defendants' development of national policies would likely be located in the District of Columbia, where the policymakers themselves reside. Thus, the Court finds that this factor weighs in favor of transfer.

### 5. Local Interest in the Controversy

As discussed above, Plaintiffs have not demonstrated that there is particular local interest in this case beyond the fact that two of the five individual Plaintiffs reside in this district. There is no peculiar localized harm, as the effects of global warming will have equal impact on the entire country. This general interest of California is outweighed by the District of Columbia's interest in the case, as the District of Columbia is where the relevant policies were made, where the policymakers are located, and where the named Defendants reside. Because these policies were likely created in the District of Columbia, the Court finds that the District of Columbia likely has a greater interest in this controversy than California, and thus this factor weighs in favor of transfer.

### 6. Familiarity of Each Forum with the Applicable Law

Plaintiffs argue that the Northern District is slightly more competent than the District of Columbia because the Northern District has previously heard and resolved a case addressing the federal public trust. Opp. at 10 (citing *City of Alameda v. Todd Shipyards*, 635 F. Supp. 1447 (N.D. Cal. 1986)). However, Defendants counter by identifying a public trust case decided by the District

---

York, Maryland, Arizona, Texas, Virginia, Vermont, Colorado, and Montana. Other individuals reside internationally, including Australia and Germany. *See* Docket Nos. 25, 28, 32, 33, 35, 36, 37, 38, 39, 40, 44, 45, 50.

1 of Columbia. Reply at 6 (citing *Sierra Club v. Andrus*, 487 F. Supp. 443 (D.D.C. 1980)). Plaintiffs
2 also argue that California has case law relating to the public trust doctrine, but the Court notes that
3 such case law would not be binding on either the Northern District or the District of Columbia, as
4 Plaintiffs are not asserting a cause of action based on California state law. *See* FAC ¶ 5. Thus, the
5 Court finds that this factor is neutral, as neither forum appears to have a greater familiarity with the
6 applicable law.

7          7.      Relative Court Congestion and Time of Trial in Each Forum

8          The Court may also consider the relative court congestion in each forum by comparing the
9 two districts' median time from filing to disposition or trial. *Decker Coal Co.*, 805 F.2d at 843. The
10 median time from filing to disposition in civil cases is 8 months for the Northern District and 6.6
11 months for the District of Columbia. Motion at 7. Furthermore, the Northern District has an
12 average of 486 pending cases per judge while the District of Columbia has an average of 269
13 pending cases per judge. Motion at 7. However, the median time from filing to trial in civil cases is
14 30.3 months in the Northern District and 38.2 months in the District of Columbia. Opp. at 11. The
15 Court finds that this factor is neutral or weighs slightly in favor of transfer, as the court congestion
16 will likely have a greater impact on the disposition of matters in this case in the Northern District
17 than in the District of Columbia.

18 C.     Interests of Justice

19         Analyzing the convenience factors together, the Court finds that transfer is warranted in this
20 case. The Court emphasizes the unique nature of this case. Instead of challenging a particular
21 decision or policy where one jurisdiction is likely to have a more focused interest than others,
22 Plaintiffs' case would involve unusual breadth and national scope. *E.g.*, FAC ¶ 16 ("This Complaint
23 seeks to investigate the effectiveness of federal authorities in planning and managing our nation's
24 response to human-induced global energy imbalance"). Plaintiffs challenge broad, nationwide
25 policies that are prepared in our nation's capitol, where the headquarters of the relevant departments
26 and agencies – as well as the Defendants themselves – are located. Furthermore, Plaintiffs do not
27 allege that the residents of the Northern District of California would suffer a unique harm from
28 Defendants' alleged failure to limit global warming; instead, Plaintiffs allege a harm that has an

equal impact on every resident of the United States. And nearly as many Plaintiffs live near the District of Columbia as those who live in or near this District. Nor are Plaintiffs' expert witnesses concentrated in or near this District. Taken together, this case is distinguishable from most environmental cases, in which a plaintiff challenges a discrete decision that affects a particular resource, project, or species that touches differentially upon the plaintiff's forum of choice.

The Court finds that transfer to the District of Columbia is warranted under § 1404(a).

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Transfer Venue. Accordingly, this action shall be transferred to the District of Columbia. The Clerk of the Court is directed to transfer the case to the District of Columbia.

This order disposes of Docket No. 95.

IT IS SO ORDERED.

Dated: December 6, 2011

_____
EDWARD M. CHEN
United States District Judge

9